UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND et al., <br><br> Plaintiffs, <br><br> v. <br><br> RG CONSTRUCTION, INC., <br><br> Defendant. | CASE NO. 2:21-cv-01313-LK <br><br> ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiffs' Amended Motion for Default Judgment. Dkt. No. 25. Plaintiffs seek to recover unpaid employee benefit contributions from Defendant RG Construction, Inc., an employer who has not appeared or defended in this action. The Court grants the motion in part and denies it in part for the reasons set forth below.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 1

## I. BACKGROUND

Plaintiffs Boards of Trustees of the Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund (collectively, "the Trust Funds") are joint labor-management funds created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c) ("LMRA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Dkt. No. 1 at 2. The Trust Funds provide employee benefits including medical, pension, and training benefits to eligible employees covered by a collective bargaining agreement ("CBA"). Dkt. No. 25 at 2–3. Defendant RG Construction, Inc. is a signatory to the CBA, which incorporates by reference the trust agreements for the Trust Funds. Dkt. No. 1 at 2–3. The CBA and trust agreements require RG Construction to make employee benefit contributions to the Trust Funds on behalf of RG Construction's employees working within with the jurisdiction of the CBA. *Id.* at 3. The complaint alleges that RG Construction failed to make timely and full employee benefit contributions for October through December 2019 and March 2021 "through current." *Id.* The Trust Funds filed their complaint in September 2021 to recover those contributions. *See generally* Dkt. No. 1.

In March 2023, the Court denied the Trust Funds' motion for default judgment without prejudice due to unexplained inconsistencies between RG Construction's remittance reports and the Trust Funds' calculations of contributions owed, and the Trust Funds failed to adequately explain their calculations. Dkt. No. 24 at 5–8. This amended motion followed. Dkt. No. 25.

## II. DISCUSSION

The Court previously found that it has subject matter and personal jurisdiction, Dkt. No. 24 at 3–4, and described the applicable legal standards, *id.* at 4–5.[1] The Court does not repeat that analysis here and instead focuses on the Trust Funds' entitlement to a default judgment based on their amended motion.

**A.   The Trust Funds Are Entitled to a Default Judgment**

The Court has considered the *Eitel* factors and finds that default judgment is appropriate in this case for the reasons laid out below. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

### 1.   The Possibility of Prejudice to the Plaintiffs

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted). Defendant has failed to respond to this action, so default judgment is the Trust Funds' only means for recovery. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022). Thus, the first *Eitel* factor supports default judgment.

### 2.   The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

In evaluating the second and third *Eitel* factors, the Court considers the merits of Plaintiffs' claims and whether the allegations in the complaint are sufficient to state a claim on which Plaintiffs may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Section 515 of ERISA provides that employers must pay contributions required "under the terms of the plan or under the terms of a collectively bargained agreement," 29 U.S.C. § 1145, and Section 502 provides for a civil action and remedies, 29 U.S.C. § 1132(a), (g).

---

[1] Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because the breach took place in this district and the Trusts are administered in this district. Dkt. No. 1 at 2–3.

To prevail on an ERISA claim for unpaid contributions, "a plaintiff must prove that: (1) the trust funds are a qualified multi-employer plan as defined by 29 U.S.C. § 100[2](37); (2) the defendant is an employer obligated to contribute under the plan's terms, and (3) the defendant failed to contribute in accordance [with] the plan." *Trs. of S. Cal. IBEW-NECA Pension Plan v. Alarm Tech Sec. Sys., Inc.*, No. CV08-3432-PSG (PJWx), 2008 WL 4196627, at *3 (C.D. Cal. Sept. 8, 2008). The first factor is met because the complaint alleges that the Trust Funds are "joint labor-management funds" created pursuant to the LMRA and ERISA. Dkt. No. 1 at 2; *Trs. of S. Cal. IBEW-NECA Pension Plan*, 2008 WL 4196627, at *3 (finding that plaintiffs had adequately pled the first element by pleading that the trusts were multi-employer trusts created and maintained pursuant to the LMRA and/or collective bargaining agreements). Turning to the second factor, the Trust Funds have adequately established that RG Construction is an employer obligated to pay contributions under the CBA. Dkt. No. 1 at 3; Dkt. No. 26 at 3–4, 34–38, 79–83, 123–27, 168–72, 192–93.

As for the third factor, the CBA and trust agreements require RG Construction to make timely employee benefit contributions to the Trust Funds, and the Trust Funds allege that RG Construction failed to make complete and timely contributions for October through December 2019 and March through December 2021. Dkt. No. 1 at 3; Dkt. No. 26 at 5–6, 211–15. Based on those allegations, the Trust Funds have sufficiently pled a claim for violation of 29 U.S.C. § 1145, and the claim has merit.

        3.      <u>The Sum of Money at Stake in the Action</u>

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). This requires courts to assess whether the recovery sought is proportional to the harm caused by defendants' conduct. "Default judgment is disfavored where

the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014), *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020). The Trust Funds seek a total of $53,749.49 against RG Construction comprised of the following amounts:

1. $26,329.82 in delinquent fringe benefit contributions for October through December 2019 and March through December 2021;
2. $15,725.41 in liquidated damages;
3. $10,537.76 in accrued pre-judgment interest;
4. $534.50 in attorney's fees; and
5. $622.00 in costs.

Dkt. No. 27 at 2, 5–7. The amount the Trust Funds seek, though substantial, is reasonable and supported by the trust agreements and the declarations and exhibits they filed in support of their motion. Dkt. Nos. 26, 27. Also, as set forth more fully below, ERISA mandates an award of unpaid contributions, interest on delinquent contributions, liquidated damages, attorney's fees, and costs on a judgment for unpaid contributions. 29 U.S.C. § 1132(g)(2). This factor weighs in favor of default judgment.

4. The Possibility of a Dispute Concerning Material Facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,t 917–18 (9th Cir. 1987).

5. Whether the Default Was Due to Excusable Neglect

Turning to the sixth factor, the record contains no indication that RG Construction's default was due to excusable neglect. RG Construction has been served and given sufficient notice of this

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 5

action. Dkt. No. 19 at 1–2. And the Trust Funds served RG Construction with a copy of their prior motion for default judgment, even though they were not required to do so since RG Construction has not appeared in this action. Dkt. No. 14 at 12; LCR 55(b)(4). RG Construction has not appeared, responded to the motion, or contested the entry of default judgment. Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment. *See Eve Nevada*, 2022 WL 279030, at *4.

      6.    <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Federal Rule of Civil Procedure 55(b) "indicates that 'this preference, standing alone, is not dispositive'" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment, especially where, as here, Defendant has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of a default judgment for the Trust Funds.

**B.  The Trust Funds' Recovery**

Having determined that a default judgment is warranted, the Court turns to the Trust Funds' recovery. As described above, the Trust Funds seek a total of $53,749.49 against RG Construction, including (1) delinquent fringe benefit contributions under ERISA for October through December 2019 and March through December 2021, (2) liquidated damages, (3) accrued pre-judgment

interest, (4) attorney's fees, and (5) costs. Dkt. No. 27 at 2, 5–7. The trust agreements and the CBA obligate RG Construction to pay each type of relief requested. Dkt. No. 1 at 3; Dkt. No. 26 at 4, 7, 34–38, 79–83, 123–27, 168–72, 192–93, 243, 271, 283, 288. ERISA also provides for each type of relief requested in an action under 29 U.S.C. § 1145 on behalf of a plan to collect delinquent contributions. *Id.* § 1132(g)(2). Section 1132(g)(2) "is 'mandatory and not discretionary.'" *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th Cir. 1984)). An award under Section 1132(g)(2) is mandatory even where, as here, the employer voluntarily paid some of the delinquent contributions after the lawsuit was filed. *Id.* at 258; Dkt. No. 26 at 212–15 (reflecting post-lawsuit payments). Accordingly, the Trust Funds have established their entitlement to an award under Section 1132(g)(2), and the only remaining issue is the appropriate amount of relief.

        1.      <u>Delinquent Contributions</u>

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also* LCR 55(b). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against [him] so that he may make a calculated decision as to whether or not it is in his best interest to answer." *Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*, No. 17-CV-03823-BLF, 2019 WL 13203780, at *2 (N.D. Cal. Nov. 20, 2019) (citation omitted).

The complaint prayed for each type of relief the Trust Funds now seek. Dkt. No. 1 at 4. The complaint also sought contributions for October through December 2019 and March 2021 "through current." *Id.* Although it is not entirely clear from the complaint whether "through current" denotes the date the complaint was filed or instead includes delinquent contributions post-dating the complaint, the complaint notes that "[t]he total amount of unpaid contributions due will be proven on motions or at trial," *id.* at 3, and the Trust Funds served RG Construction with their

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 7

first motion for default judgment in which they explicitly sought delinquent contributions through December 2021, thereby providing clarification that "current" included post-complaint contributions. Dkt. No. 14 at 8–9, 12; *see also A.F. v. Cnty. of San Bernardino*, No. EDCV 12-00896 VAP(SPx), 2015 WL 13914773, at *9 (C.D. Cal. May 11, 2015) (by personally serving defendant with a copy of the motion for default judgment, "Plaintiffs ensured that the purpose of Rule 54(c)—to provide a defendant notice of the amount they could be liable for—is met"). Accordingly, the Trust Funds are entitled to recover delinquent contributions for October through December 2019 and March through December 2021.

The Court does not presume the truth of any factual allegations related to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. Thus, "a plaintiff seeking money damages must 'prove-up' the damages" sought through admissible evidence. *FAMCO*, 2019 WL 13203780, at *3 (citation omitted). The Court denied the Trust Funds' prior motion for default judgment because they failed to explain how they calculated the amounts allegedly due and there were "unexplained inconsistencies between RG Construction's remittance reports and the calculations from the Trust Funds." Dkt. No. 24 at 5. Their current motion includes a declaration from Ploy Kepner, who works for Welfare & Pension Administration Service, Inc., the third party administrator for the Trust Funds. Dkt. No. 26 at 1–2. His principal responsibility is to act at the Senior Data Controller for the Trust Funds. *Id.* at 2. Mr. Kepner's declaration explains how the amount of unpaid contributions were calculated. *Id.* at 5–6. He also explains the discrepancy between the remittance reports and the Trust Funds' calculations: RG Construction made various errors in its remittance reports that resulted in its underpayments. *Id.* at 5, 209.

The Trust Funds' filings support their contention that RG Construction owes $26,329.82 in "contribution shortages" for October through December 2019 and March through December 2021. Dkt. No. 1 at 3 (listing unpaid contributions from October through December 2019); Dkt.

No. 26 at 5–6, 211–15 (listing total amounts paid and owed). The Court therefore awards the Trust Funds $26,329.82 in delinquent, unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(A).

                2.      <u>Liquidated Damages</u>

The Trust Funds seek $15,725.41 in liquidated damages. Dkt. No. 26 at 9, 211–15. ERISA provides for liquidated damages in "an amount equal to the greater of" interest on the unpaid contributions or as provided for under the plan "in an amount not in excess of 20 percent" of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The trust agreements provide that the delinquent employer "shall be liable for a liquidated damage charge in the sum of twelve percent (12%) of the amount of his delinquency; provided that such liquidated damages shall in no event be less than twenty-five dollars ($25.00)." Dkt. No. 26 at 243; *see also id.* at 271, 283, 288.

The Trust Funds' spreadsheets show that while RG Construction paid some of the delinquent amounts, they did so only after this suit was filed. Dkt. No. 26 at 212–15. The Trust Funds are entitled to liquidated damages on the full amount of delinquent contributions. *Id.*; *see, e.g.*, *Nw. Sheet Metal Workers Organizational Tr. v. Gloor*, No. C07-0056-JCC, 2007 WL 9775559, at *3 (W.D. Wash. Oct. 19, 2007) (awarding liquidated damages and interest on all delinquent contributions, including those that were paid after the commencement of suit).

Turning to the specific amount of liquidated damages requested, Mr. Kepner's declaration states that he calculated the amount of liquidated damages due using the formula in the trust agreements: overdue contributions multiplied by 12% or $25, whichever is greater. Dkt. No. 26 at 7. That calculation is consistent with the trust agreements. Dkt. No. 26 at 243, 271, 283, 288. Mr. Kepner attached a spreadsheet that shows the formula used to calculate liquidated damages and the amount of liquidated damages owed for each month contributions were delinquent at a rate of 12% of the unpaid contributions, except in December 2019, when the Trust Funds assessed liquidated damages for training at $25. Dkt. No. 26 at 212–15. Having determined that the Trust

Funds' calculations are correct and consistent with the agreements, the Court awards them $15,725.41 in liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii) and the trust agreements.[2]

### 3. Attorney's Fees

The Trust Funds seek $534.50 in attorney's fees. Dkt. No. 25 at 9. ERISA allows recovery of "reasonable attorney's fees[.]" 29 U.S.C. § 1132(g)(2)(D). Attorney's fees awards in ERISA actions are calculated using a hybrid lodestar/multiplier approach. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This approach has two parts: (1) the court determines the lodestar amount by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate, and (2) the court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation. *Id.* To determine the total amount claimed, the Trust Funds used the lodestar method and have not requested an adjustment of that method. Dkt. No. 27 at 2. Nor does the Court find that any of the *Kerr* factors recommend an upward or downward adjustment. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying and adopting 12 factors "to be considered in the balancing process required in a determination of reasonable attorney's fees."), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

The Court finds that counsel's hourly rate of $275–$285[3] per hour, Dkt. No. 27 at 2, is reasonable for the work performed and for the Seattle market. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate,

---

[2] Calculating liquidated damages under the rate in the plans results in an award of $15,725.41, which is greater than the $10,537.76 awarded below in pre-judgment interest on the unpaid contributions. Therefore, the Court awards $15,725.41, which is "an amount equal to the greater of" the two amounts. 29 U.S.C. § 1132(g)(2)(C).

[3] Counsel's hourly rate was $275 per hour for work performed through December 14, 2021, and thereafter increased to $285 per hour. Dkt. No. 27 at 2.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 10

the relevant community is the forum in which the district court sits."); *Bds. of Trs. of Seattle Area Plumbing & Pipefitting Indus. Health & Welfare Tr. v. Optimal Facility Sols., LLC*, No. 2:18-cv-00443-RAJ, 2019 WL 5887292, at *2 (W.D. Wash. Nov. 12, 2019) (finding reasonable the Trust Funds' counsel's $290 hourly rate). The Trust Funds' counsel billed 1.9 hours to litigate this case. Dkt. No. 27 at 5. While most of counsel's time was spent "review[ing]" filings that were apparently prepared by someone else, that pre-filing review was appropriate and necessary in light of counsel's obligations under Federal Rule of Civil Procedure 11. *Id.* In addition, the overall amount of fees requested is reasonable in light of the work performed and the result obtained.

In sum, the Court finds that Plaintiffs' counsel has performed 1.9 compensable hours of work on this matter at the reasonable rate of $275–285 per hour, and therefore awards the Trust Funds $534.50 in fees.

### 4. Costs

The Trust Funds seek $622 in costs comprised of the filing fee and fees for service of the summons and complaint. Dkt. No. 27 at 7. ERISA allows recovery of the "costs of the action," 29 U.S.C. § 1132(g)(2)(D), and the trust agreements also provide for an award of "court costs" in an action to recover delinquent contributions, Dkt. No. 26 at 243, 271, 283, 288. The filing fee and costs of service are recoverable under those provisions. *See, e.g.*, *Masonry Sec. Plan of Wash. v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *4 (W.D. Wash. Aug. 13, 2021) (awarding filing fee and service costs in an ERISA action). Therefore, the Court awards the Trust Funds $622 in costs.

### 5. Interest

The Trust Funds seek $10,537.76 in pre-judgment interest, which represents 12% per annum of the amount of delinquent contributions. Dkt. No. 25 at 5; Dkt. No. 26 at 7. An award of interest on unpaid contributions is authorized by 29 U.S.C. § 1132(g)(2)(B), and such interest

"shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g). The rate requested here is consistent with the 12% rate in the trust agreements, Dkt. No. 26 at 243, 271, 283, 288, and the statute awards interest to parties who obtain judgments in favor of trusts. *See, e.g.*, *Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101-JLR, 2014 WL 2893298, at *7 (W.D. Wash. June 25, 2014) (citing *Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 F. App'x 680, 683 (9th Cir. 2007)). Therefore, the Trust Funds are entitled to pre-judgment interest at 12% under the trust agreements and Section 1132(g)(2)(B), (E) in the amount of $10,537.76.

Finally, the Trust Funds ask for post-judgment interest on the judgment at the same 12% per annum rate pursuant to the trust agreements. Dkt. No. 25-1 at 2. There are two problems with that request. First, the relevant contractual provisions entitle the Trust Funds to post-judgment interest at the contractual rate of 12% only as to the delinquent contributions. *See* Dkt. No. 26 at 243 ("Delinquent contributions shall also bear interest at the rate of twelve percent (12%) per annum or at the highest rate permitted under applicable law, if less, from the time they become due and payable."); *id.* at 271, 283, 288. Second, "while prevailing parties are entitled to post-judgment interest at the statutory rate as a matter of right, *see* 28 U.S.C. § 1961, a party must demand post-judgment interest at a contractual rate in the pleadings in order to receive it on a default judgment." *Gateway Com., LLC v. Boshart*, No. 16-CV-81772-DMM, 2017 WL 7346367, at *3 (S.D. Fla. June 30, 2017) (citing Fed. R. Civ. P. 54); *see also, e.g., O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1207 (10th Cir. 2004) (affirming district court's refusal to award plaintiffs contractual rate of post-judgment interest because plaintiffs did not provide defendants adequate notice of such claim); *Berholtz v. P4 Meditech Analytics, LLC*, 600 F. Supp. 3d 1128, 1136 (S.D. Cal. 2022) (refusing to grant prevailing party post-judgment interest under California law where it was not demanded in the pleadings); *BP Prod. N. Am., Inc. v. Youssef*, 296 F. Supp.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 12

2d 1351, 1355 (M.D. Fla. 2004) (refusing to grant prevailing party post-judgment interest at the contractual rate, where the contractual rate was not demanded in the pleadings). The Trust Funds' generic request for "such other and further relief as this court deems just and equitable," Dkt. No. 1 at 4, is insufficient to satisfy Rule 54(c). *Berholtz*, 600 F. Supp. 3d at 1136; *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (holding that a request for pre-judgment interest must be contained in the pleadings and that "boilerplate" language requesting "further relief which this Court deems just and proper" cannot "substitute for the meaningful notice called for by Rule 54(c), which anticipates that defendants will look to the demand clause to understand their exposure in the event of default"). Accordingly, the Court awards the Trust Funds post-judgment interest at the rate fixed under 28 U.S.C. § 1961. *See, e.g.*, *Berholtz*, 600 F. Supp. 3d at 1135–36.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' amended motion for default judgment. Dkt. No. 25. Default judgment shall enter in favor of the Boards of Trustees of the Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund and against Defendant RG Construction, Inc. as follows:

1. $26,329.82 in delinquent fringe benefit contributions under ERISA for October through December 2019 and March through December 2021;
2. $15,725.41 in liquidated damages;
3. $10,537.76 in accrued pre-judgment interest;
4. $534.50 in attorney's fees;

5.  $622.00 in costs;

6.  Post-judgment interest on all judgment amounts at the rate fixed under 28 U.S.C. § 1961.

Dated this 3rd day of July, 2024.

                                                   Lauren King
                                                   United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT - 14